United States District Court
Southern District of Texas
FILED

SEP 2 6 2000

Michael N. Milby, Clerk

UNITED STATES DISTRICT COURT  SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| VINICIO JARAMILLO § § vs. § § BROADWAY SHRIMP & OYSTERS, § INCORPORATED, LEE KALISEK, § *Individually and d/b/a KALISEK* § *TRAWLERS,* BROADWAY TRAWLERS, § INC., ZIMCO MARINE, INC., PAULSEN § WIRE ROPE CORPORATION, § NATIONAL ROPES, *A Division of* § *PAULSEN WIRE ROPE CORPORATION,* § and McELROY MARINE MACHINERY § | CIVIL ACTION NO. C-00-005  ADMIRALTY / JURY DEMANDED |

## PLAINTIFF'S SECOND AMENDED ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES VINICIO JARAMILLO, hereinafter identified as "Plaintiff," and makes and files this his Second Amended Original Complaint, complaining of BROADWAY SHRIMP & OYSTERS, INCORPORATED, LEE KALISEK, *Individually and d/b/a KALISEK TRAWLERS,* BROADWAY TRAWLERS, INC., ZIMCO MARINE, INC., PAULSEN WIRE ROPE CORPORATION, NATIONAL ROPES, *A Division of PAULSEN WIRE ROPE CORPORATION,* and McELROY MARINE MACHINERY, hereinafter identified individually by name or collectively described as "Defendants," and for cause of action would respectfully show unto the Court as follows:

I.
PARTIES

A.  Plaintiff, VINICIO JARAMILLO, is an individual residing in Seadrift, Texas.

1

**B.**     Defendant, BROADWAY SHRIMP & OYSTERS, INCORPORATED, has appeared herein. No service is necessary at this time.

**C.**     Defendant, LEE KALISEK, *Individually and d/b/a KALISEK TRAWLERS*, has appeared herein. No service is necessary at this time.

**D.**     Defendant, BROADWAY TRAWLERS, INC., is a Texas corporation which may be served with process by and through its registered agent: Vicky Kalisek, 1311 Jackson Street, Port Lavaca, Texas 77979.

**E.**     Defendant, ZIMCO MARINE, INC., has appeared and answered herein. No service is necessary at this time.

**F.**     Defendant, PAULSEN WIRE ROPE CORPORATION, is a foreign corporation doing business in the State of Texas and which may be served with process by and through its registered agent: C.T. Corporation System, 350 N. St. Paul Street, Dallas, Texas 75201.

**G.**     Defendant, NATIONAL ROPES, *A Division of PAULSEN WIRE ROPE CORPORATION,* is a foreign corporation and wholly-owned division of Defendant-PAULSEN WIRE ROPE CORPORATION, but does not maintain an agent for service of process in Texas. Therefore, Defendant-NATIONAL ROPES can be served with process via certified mail, return receipt requested, directed to Defendant-PAULSEN WIRE ROPE CORPORATION at the principal business address for both corporations: 880 S. 2nd Street, Sunbury, Pennsylvania 17801.

**H.**     Defendant, McELROY MARINE MACHINERY, is a Mississippi business entity. Pursuant to TEX. CIV. PRAC. & REM. CODE ANN. §17.042, Defendant is a nonresident corporation which has in the past done and/or is currently doing business, engaging in business, and/or transacting in business in the State of Texas generally, but has failed to appoint or maintain a resident agent for service of process. Further, Defendant is required by Texas law to maintain an agent for service of

2

process, but has failed to do so. TEX. BUS. CORP. ACT ANN. ART. 8.08. For these reasons, Defendant is deemed to have appointed the Secretary of the State of Texas as its registered agent for service of process, and, therefore, the Petition and Citation should be served by serving the Secretary of the State of Texas, pursuant to TEX. CIV. PRAC. & REM. CODE ANN. §17.044(b) and TEX. BUS. CORP. ACT ANN. ART. 8.10B. Therefore, a copy of the Summons and Complaint should be mailed via Certified Mail, Return Receipt Requested, by the Secretary of the State of Texas, to Defendant-McELROY MARINE MACHINERY, by and through its home office, located at 10011 Lorraine Rd., Gulfport, Mississippi 39503, pursuant to TEX. CIV. PRAC. & REM. CODE ANN. §17.045(a).

## II.
## POTENTIAL PARTIES

**A.**  The following individuals and/or entities are potential parties to this lawsuit who have been informally identified by Defendants-BROADWAY/KALISEK and may be added upon the completion of additional discovery:

    **1.**  "Fisherman's Supply" in Freeport, Texas (sold the winch to Defendants-BROADWAY/KALISEK); and,

    **2.**  The manufacturer of the "Columbian" cable in question.

## III.
## JURISDICTION

The jurisdiction of this Court is invoked pursuant to the following:

**A.**  Art. III, §2 of the United States Constitution (i.e., "all cases of admiralty and maritime jurisdiction");

**B.**  28 U.S.C. §1331 (i.e., "all civil actions arising under the Constitution, laws");

**C.**  28 U.S.C. §1333(1) (i.e., "any civil case of admiralty or maritime jurisdiction");

**D.**  28 U.S.C. §1916 (action by seaman, without pre-payment of costs, under the Judicial

Code);

**E.** 46 U.S.C. §688, *et seq.* (a.k.a., the "Jones Act"); and,

**F.** 28 U.S.C. §1367 ("supplemental jurisdiction"). <u>See also</u>, *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966); *Nolan v. Boeing Co.*, 919 F.2d 1058, 1063 (5th Cir.1990).

## IV.
## VENUE

**A.** Plaintiff and Defendants-ZIMCO, -BROADWAY and -KALISEK are citizens and residents of the State of Texas and, more particularly, of the federal judicial district known as the Southern District of Texas. In addition, the Plaintiff's cause of action accrued within this Judicial District and Division.

**B.** Pursuant to 28 U.S.C. §1391, venue is proper in the Corpus Christi Division of the Southern District of Texas.

## V.
## OPERATIVE FACTS

**A.** On or about May 26, 1999, Plaintiff was aboard the F/V HEATHER (hereinafter, the "vessel") in the course and scope of his employment by and for the vessel and its legal owner(s) and/or operator(s), Defendants-BROADWAY/KALISEK herein, having previously been engaged by contract of employment to serve as "captain" of this shrimp boat.

**B.** On such date, while in the course and scope of his employment by and for the vessel and its owner(s)/operator(s), and through the negligence of Defendants, their agents, servants, employees, representatives, or others for whom such Defendants were and are legally responsible, and/or the unseaworthiness of the F/V HEATHER, Plaintiff's right arm was ripped off just above the elbow when his right hand became affixed to the net cable (i.e., as he attempted to guide the cable onto the spool of the vessel's winch while hauling in the net) and his hand and arm were subsequently pulled

4

into and through the spool of cable. Such injury occurred approximately one mile southeast of Indianola, Texas and was precipitated by the following facts and circumstances, without limitation to same: (1) the vessel employed a winch cable that was old, frayed, and coated with a thick, anticorrosive substance, which old, frayed, "coated" or otherwise defective cable secured Plaintiff's hand to the cable as Plaintiff was attempting to align the incoming cable onto the spool of the winch; (2) Defendants-ZIMCO, -PAULSEN and -NATIONAL sold the cable in question for use aboard fishing vessels such as the F/V HEATHER notwithstanding the fact that Defendants-ZIMCO, -PAULSEN and -NATIONAL knew of should have known that the cable was used, frayed, "redipped" in anticorrosive substance, and/or otherwise defective; (3) the winch lacked a guard or other similar devices to prevent access to the moving parts of the winch; (4) the power switches and gear lever of the winch were designed and located in positions and/or at distances that prevented Plaintiff from shutting off the power or reversing the gear before his arm was pulled into and through the spool of cable, i.e., after his hand became affixed to the cable in question; (5) the vessel was inadequately manned (e.g., the only other crew member was "at the wheel" while Plaintiff brought in the nets alone and, as a result, there was no one to assist Plaintiff by shutting off the power or reversing the winch gear before Plaintiff's arm was pulled into and through the winch spool); and, (6) the vessel's crew was inadequately trained (i.e., Plaintiff was forced to bring in the nets, rather than running the vessel as would be customary for the ship's captain, as his lone deckhand did not know how to use the winch in question).

C.     As a result of the aforesaid acts and/or omissions of Defendants hereto, either singularly or in combination with one another, Plaintiff was caused to sustain serious and disabling injuries to his mind and body.

5

# VI.
# CAUSES OF ACTION

**A.**     For each and every of the following allegations, Plaintiff hereby incorporates all facts presented in Paragraph V of this Original Complaint, as well as any additional facts which may be presented in any paragraph hereinunder.

**B.     <u>PLAINTIFFS *versus* DEFENDANTS-BROADWAY/KALISEK</u>**

   **1.     "Jones Act" Negligence**

   **(a)**     As a seaman and member of the crew of the F/V HEATHER, Plaintiff was within that class of persons protected by 46 U.S.C.A. §688, *et seq.*, known as the "Jones Act," which is cumulative of and supplemental to the General Maritime Law of the United States, the protection of which Plaintiff enjoys simply by virtue of his status as a seaman attached to and in the service of an identifiable vessel or fleet of vessels.

   **(b)**     Plaintiff was injured because of the negligence of Defendants-BROADWAY/KALISEK in the way the vessel was manned, equipped, operated, and maintained, as described in the preceding paragraphs.

   **(c)**     Plaintiff's injuries were caused/inflicted without any contributing fault or neglect on his part, and solely because of the negligence of Defendants-BROADWAY/KALISEK, their agents, servants, employees, representatives, or others for whom these Defendants are legally responsible.

   **(d)**     The negligent acts and omissions of Defendants-BROADWAY/KALISEK were and are a proximate cause of the injuries and damages made the basis of this lawsuit.

   **2.     "Unseaworthiness" of the F/V HEATHER**

   **(a)**     Plaintiff would further show that, at all times material to this cause, the F/V HEATHER was "unseaworthy," as that term is understood under the General Maritime Law of

6

the United States.

**(b)** The unseaworthy condition of the F/V HEATHER includes, but is not limited to, the quality and characteristics of the cable, the winch, and the crew, as described hereinabove.

**(c)** These and other conditions existed on or with the vessel, creating an unseaworthy condition (i.e., rendering the vessel unsafe for its ordinary and intended purpose) which was a producing cause of the injuries and damages made the basis of this lawsuit.

### 3. "Maintenance" & "Cure"

As the Plaintiff was injured in the course and scope of his maritime employment by and for the F/V HEATHER and/or its owner(s), the General Maritime Law of these United States provides that the Plaintiff was and is entitled to receive "maintenance" and "cure" from the vessel and/or its owner.

### C. PLAINTIFF *versus* DEFENDANTS-ZIMCO, -PAULSEN and -NATIONAL

#### 1. Design Defect

**(a)** The cable in question was purchased by Defendants-BROADWAY/KALISEK from Defendant-ZIMCO.

**(b)** At the time the cable in question was sold, Defendant-ZIMCO was in the business of selling cables such as the cable in question.

**(c)** At the time the cable in question was sold by Defendant-ZIMCO, it was defective in design and unreasonably dangerous with regard to the lack of strength and durability of the cable in question.

**(d)** Defendant-ZIMCO received the cable in question from Defendants-PAULSEN and/or -NATIONAL.

**(e)** At the time the cable in question was sold by Defendants-PAULSEN and/or

-NATIONAL, it was defective in design and unreasonably dangerous with regard to the lack of strength and durability of the cable in question.

**(f)** These defective and unreasonably dangerous conditions were a producing cause of the injuries and damages made the basis of this lawsuit.

2. **Manufacturing Defect**

**(a)** At the time the cable in question left the possession of Defendants-ZIMCO, -PAULSEN and -NATIONAL, it suffered from a defective condition that rendered it unreasonably dangerous.

**(b)** More specifically, at the time the cable in question left the possession of Defendants-ZIMCO, -PAULSEN and -NATIONAL, it suffered from manufacturing defects such that it would deteriorate quickly when used for the purposes for which it was designed and sold.

**(c)** The manufacturing defect of the cable in question was dangerous to an extent beyond that which would be contemplated by and ordinary user of the product, and was a producing cause of the injuries and damages made the basis of this lawsuit.

3. **Marketing Defect**

**(a)** At the time the cable in question left the possession of Defendants-ZIMCO, -PAULSEN and -NATIONAL, such Defendants had failed to give adequate warnings pertaining to the dangers of the cable in question.

**(b)** More particularly, Defendants-ZIMCO, -PAULSEN and -NATIONAL failed to give adequate warnings regarding the inadequate strength and durability of the cable in question.

**(c)** Defendants-ZIMCO, -PAULSEN and -NATIONAL knew or should have known that the cable in question could break, fray or other deteriorate in ways or at a speed that would be unexpected to the purchaser, Defendants-BROADWAY/KALISEK.

**(d)** The failure of Defendants-ZIMCO, -PAULSEN and -NATIONAL to give adequate instructions to avoid the dangers regarding the cable in question rendered the product unreasonably dangerous as marketed.

**(e)** The failure of Defendants-ZIMCO, -PAULSEN and -NATIONAL to give adequate warnings regarding the cable in question was a producing cause of the injuries and damages made the basis of this lawsuit.

  **4.**   **Express/Implied Warranties**

**(a)** In addition, Defendants-ZIMCO, -PAULSEN, and -NATIONAL expressly and impliedly warranted to the public generally, and specifically to the Defendants-BROADWAY/KALISEK and the vessel's crew, including Plaintiff, that the cable in question was: (1) of marketable quality, and was safe and fit for the purposes intended when used under ordinary conditions and in an ordinary manner; and, (2) fit for the particular purposes contemplated by Defendants-BROADWAY/KALISEK (and all prospective users of the cable), and known to Defendants-ZIMCO, -PAULSEN and -NATIONAL at the time of purchase. Defendants-BROADWAY/KALISEK and the vessel's crew, including Plaintiff, relied upon these expressed and implied warranties and Plaintiff suffered the injuries and damages set forth as a proximate result of the breach of these warranties.

**(b)** For the foregoing reasons, Plaintiff relies upon the following provisions of the Texas Business & Commerce Code, and would assert his rights to damages arising from violations of these same provisions: §2.313(1), *Express Warranties by Affirmation, Promise, Description, Sample*; §2.314, *Implied Warranty; Merchantability; Usage of Trade*; and, §2.315, *Implied Warranty; Fitness for Particular Purpose*. In addition, as §2.318 of the Code (i.e., pertaining to Third Party Beneficiaries of Warranties Express or Implied) evinces the Texas legislature's desire to permit the

9

Courts of Texas to resolve all issues of or concerning "privity requirements of express or implied warranties," Plaintiff relies upon the settled common law of the State of Texas for the extension of the heretofore-described warranty rights to Plaintiff herein.

     **5.**    **Negligence**

     **(a)**    The Plaintiff was injured because of the negligence of Defendants-ZIMCO, -PAULSEN and -NATIONAL in the method or manner in which the cable in question was inspected, maintained, refurbished, repaired, and/or marketed, as described hereinabove.

     **(b)**    Plaintiff's injuries were caused without any contributing fault or neglect on his part, and solely because of the negligence of Defendants-ZIMCO, -PAULSEN and -NATIONAL, their agents, servants, employees, representatives, or others for whom these Defendants are legally responsible.

     **(c)**    The negligent acts and/or omissions of Defendants-ZIMCO, -PAULSEN and -NATIONAL were and are a proximate cause of the injuries and damages sustained by the Plaintiff.

**D.**    **PLAINTIFF *versus* DEFENDANT-McELROY**

     **1.**    **Standing**

     **(a)**    The "Stroudsburg" winch in question was purchased by Defendants-BROADWAY/KALISEK from an approved retailer of such winches.

     **(b)**    Defendant-McELROY, as a successor in interest to "Stroudsburg," now stands as the "winch manufacturer" in these proceedings.

     **2.**    **Design Defect**

     **(a)**    At the time the winch in question was purchased by Defendants-BROADWAY/KALISEK, it was defective in design and unreasonably dangerous with regard to the lack of a winch guard and the configuration of the power controls.

**(b)** These defective and unreasonably dangerous conditions were a producing cause of the injuries and damages made the basis of this lawsuit.

3. **Manufacturing Defect**

**(a)** At the time the winch in question left the possession of the manufacturer, it suffered from a defective condition that rendered it unreasonably dangerous.

**(b)** More specifically, at the time the winch in question left the possession of the manufacturer, it suffered from manufacturing defects such that it would not operate properly under the conditions and in the manner for which it was designed and sold.

**(c)** The manufacturing defect of the winch in question was dangerous to an extent beyond that which would be contemplated by and ordinary user of the product, and was a producing cause of the injuries and damages made the basis of this lawsuit.

4. **Marketing Defect**

**(a)** At the time the winch in question left the possession of the manufacturer, such Defendant had failed to give adequate warnings pertaining to the dangers of the winch in question.

**(b)** More particularly, the manufacturer failed to give adequate warnings regarding the operation of the winch in question, and the manufacturer knew or should have known that the failure to give such warnings concerning the operation of the winch could lead to injury.

**(c)** The failure of the manufacturer to give adequate instructions to avoid the dangers regarding the winch in question rendered the product unreasonably dangerous as marketed.

**(e)** The failure of the manufacturer to give adequate warnings regarding the winch in question was a producing cause of the injuries and damages made the basis of this lawsuit.

5. **Express/Implied Warranties**

**(a)** In addition, the winch manufacturer expressly and impliedly warranted to the public

11

generally, and specifically to the Defendants-BROADWAY/KALISEK and the vessel's crew, including Plaintiff, that the winch in question was: (1) of marketable quality, and was safe and fit for the purposes intended when used under ordinary conditions and in an ordinary manner; and, (2) fit for the particular purposes contemplated by Defendants-BROADWAY/KALISEK (and all prospective users of the winch), and known to the winch manufacturer at the time of purchase. Defendants-BROADWAY/KALISEK and the vessel's crew, including Plaintiff, relied upon these expressed and implied warranties and Plaintiff suffered the injuries and damages set forth as a proximate result of the breach of these warranties.

**(b)** For the foregoing reasons, Plaintiff relies upon the following provisions of the Texas Business & Commerce Code, and would assert his rights to damages arising from violations of these same provisions: §2.313(1), *Express Warranties by Affirmation, Promise, Description, Sample*; §2.314, *Implied Warranty; Merchantability; Usage of Trade*; and, §2.315, *Implied Warranty; Fitness for Particular Purpose*. In addition, as §2.318 of the Code (i.e., pertaining to Third Party Beneficiaries of Warranties Express or Implied) evinces the Texas legislature's desire to permit the Courts of Texas to resolve all issues of or concerning "privity requirements of express or implied warranties," Plaintiff relies upon the settled common law of the State of Texas for the extension of the heretofore-described warranty rights to Plaintiff herein.

**6. Negligence**

(a) The Plaintiff was injured because of the negligence of the winch manufacturer in the method or manner in which the winch in question was inspected, maintained, refurbished, repaired, and/or marketed, as described hereinabove.

**(b)** Plaintiff's injuries were caused without any contributing fault or neglect on his part, and solely because of the negligence of the winch manufacturer, its agents, servants, employees,

representatives, or others for whom this Defendant is legally responsible.

(c) The negligent acts and/or omissions of the winch manufacturer were and are a proximate cause of the injuries and damages sustained by the Plaintiff.

## VII.
## DAMAGES

A. **GENERAL**

1. By reason of the foregoing, Plaintiff has sustained painful and permanent injuries to his mind and body, said injuries being of such a nature and severity as to render him incapacitated from work.

2. As a result of these injuries, Plaintiff will be unable to engage in any future activity of his vocation which demands the full use of his mind and body.

3. As a result of the Defendants' conduct and/or the unseaworthiness of the F/V HEATHER, as alleged, Plaintiff seeks to recover those damages provided by law, which include, but are not limited to, the reasonable and necessary medical expenses incurred by him to date; the reasonable and necessary medical expenses to be incurred by him in the future; physical pain and suffering that he has experienced in the past and will, in all reasonable probability, experience in the future; mental anguish that he has experienced in the past and will, in all reasonable probability, experience in the future; physical disfigurement; inconvenience; loss of earnings in the past; loss of wage earning capacity in the future; loss of physical capacity other than wage earning capacity; loss of life's enjoyments; and any and all other damages to which he may be entitled.

B. **"MAINTENANCE" & "CURE"**

1. Under the General Maritime Law of these United States, Plaintiff was and is entitled to receive adequate and timely "maintenance" and "cure" from the vessel and/or its owner, and he

13

now asserts his right to receive said adequate and timely maintenance and cure.

2. Adequate maintenance has not been paid to Plaintiff.

3. Upon the facts of this case, Plaintiff asserts his right to adequate maintenance in the amount of Forty Dollars ($40.00) per day, to be paid until such time as Plaintiff has achieved "maximum cure" from the injuries made the basis of this lawsuit.

4. In addition, the vessel and/or its owner(s) has/have failed and refused to provide adequate and timely "cure" in the manner required by the General Maritime Law of these United States. As a result of vessel's and/or its owner's failure and refusal to pay adequate and timely cure benefits, Plaintiff has suffered great hardship, including, but not limited to, an exacerbation of the physical and mental injuries alleged herein.

5. This failure and refusal to provide adequate and timely maintenance and cure to Plaintiff was and is wilful, arbitrary and capricious in nature.

C.  **ADDITIONAL DAMAGES, ATTORNEY'S FEES & EXPENSES**

Because of the vessel's and/or its owner('s') wilful, arbitrary and capricious failure and refusal to pay adequate and timely maintenance and cure, Plaintiff is required to proceed to Court on the issue of maintenance and cure and ask for additional damages, reasonable attorney's fees and expenses.

## VIII.
## DEMAND FOR TRIAL BY JURY

Plaintiff respectfully requests a TRIAL BY JURY, on all issues so triable.

## IX.
## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that citation be issued and

served upon Defendants in the form and manner prescribed by law, requiring Defendants to appear and answer herein, and that, upon final hearing hereon, Plaintiff have

1. Judgment against Defendants, for actual damages, including maintenance and cure;

2. Pre-judgment interest, at the legal rate;

3. Post-judgment interest, at the legal rate;

4. Costs of Court;

5. Costs of Suit; and

6. All such other and further relief to which Plaintiff may be justly entitled, including, without limitation, attorney's fees and expenses.

Respectfully submitted,

R. BLAKE BRUNKENHOEFER, P.C.
American Bank Plaza
711 N. Carancahua, Suite 1000
Corpus Christi, Texas 78475
Tel:   (361) 888-6655
Fax:   (361) 888-5855

_____
R. Blake Brunkenhoefer
State Bar No. 00783739
Southern District of Texas No. 15559

15

## CERTIFICATE OF SERVICE

I, R. Blake Brunkenhoefer, do hereby certify that a true and correct copy of the above and foregoing PLAINTIFF'S SECOND AMENDED ORIGINAL COMPLAINT was served, in the manner indicated, upon

| | |
|---|---|
| Lee Kalisek<br>912 Broadway<br>Port Lavaca, Texas 77979 | **VIA FAX (361) 552-4177** |
| Lyle R. Rathwell<br>Daniel E. Pellar<br>RATHWELL & NIZIALEK, P.C.<br>1450 Lake Robbins Drive, Suite 300<br>The Woodlands, Texas 77380 | **C.M./R.R.R. #7099 3220 0008 1613 7378**<br>**& FACSIMILE (281) 296-6970** |

in accordance with Rule 5 of the Federal Rules of Civil Procedure and the Local Rules of the Southern District of Texas, on this the 25th day of September, 2000.

_____
R. Blake Brunkenhoefer

16